Good morning, Your Honors. My name is Eric Babcock, and I represent the petitioner and appellant, Arthur Garner. Judge, how can you hear? Maybe make sure. Can you hear me? You're breaking up a little bit, but you wanted us to make sure that counsel speaks up. Can you hear me? I don't think he can hear us, Tulio. All right. Go ahead. I can hear you. Can you hear us, Judge Hogg? Yes. Can you hear me?  Can you hear the attorney? Yes. Good morning, Your Honor. Mr. Garner, please tell me if you missed something. I would like to reserve two minutes for rebuttal, Your Honor. All right, counsel. We believe that Judge Wilkin made an error here because Mr. Garner alleged facts which, if proven true, would have entitled him to relief. And this particular claim that we've raised here had turned on credibility determinations. And it was really impossible to determine just from the papers without hearing from witnesses. It was impossible for the district court to make those credibility determinations. My client submitted an affidavit from Michael Anthony, who was in the jail at the same time as my client way back in 1990 down in San Mateo. This is really, and isn't it at heart, an ineffective assistance of counsel claim? It is an ineffective assistance of counsel claim. As the Court knows, my client filed a pro se habeas petition, and it wasn't And do I understand the counsel is deceased? Trial counsel has been deceased for quite a number of years, yes. I believe back in sometime in the 90s. So it would be rather hard to hear his side of the story. Impossible, I think, yes. Well, maybe from his records sometimes, if the records still exist, you can glean the strategy from the notes that are in the file sometimes. Unfortunately, we don't have trial counsel's actual file for Mr. Garner's case. But what we do have is a declaration from a man who was in the jail at the same time as my client and the same time as the informant. But what does that declaration really tell us, except that in the view of the declarant, your client would never have talked to the other guy? Well, it's actually far more specific than that, Your Honor. Mr. Anthony said that he became aware of Arthur Ray, the informant's arrival at the jail, and that he notified Mr. Garner that Mr. Ray was an informant before Mr. Ray was sent to the housing unit. Mr. Ray's trial testimony was that the information, the discussions he had with my client, took place at the housing unit. So if Mr. Anthony's declaration is true, if his testimony is true, it seems impossible that my client, if he'd been told Mr. Ray, if he already knew Mr. Ray was an informant, that he would have had this discussion and made these alleged admissions about committing this attempted murder for hire. Well, the defense at trial was that Mr. Ray was lying and that he was subject to cross-examination on various grounds. What makes you think this would have been material? Well, in our view, the informant's testimony was central at this trial. As the Court knows, there was conflicting evidence from independent witnesses at the restaurant, the Moonraker restaurant, where my client spent the majority of that evening. The bartender said that my client came to the restaurant and bar and never left the whole evening. But there was different testimony. The hostess said, oh, yeah, he came by the hostess stand and he left and came back 20 minutes later. The victim identified your client as the perpetrator of the offense. So how could the evidence that you're describing have been material in view of all of the other evidence, including the fact that Mr. Ray was impeached in any of them? Well, he wasn't really impeached. I mean, the fact that he was a professional informant for 17 years was argued, but obviously the jury didn't find that sufficient to impeach his credibility. Well, but he was that information. I mean, he was cross-examined and it was brought out that he was a professional informant. So the jury had that information when it was weighing his credibility. Right. But if the jury had known that my client knew he was an informant before Mr. Ray ever reached the housing unit, that would have been a basis to entirely just discredit and discard Mr. Ray's testimony. And the jury was not given that information. And really the question is, you know, whether the state court's decision here is based on a reasonable determination of the facts. Was your new evidence presented at all levels of the state court? The claim that trial counsel failed to investigate the informant's credibility was that claim was presented to the state courts, including Michael Anthony's declaration, which said that he notified my client that Mr. Ray was an informant before he ever reached the housing unit. The part that was not submitted to state court was information that was obtained because of a subpoena, ducus tecum, that Judge Wilken issued at the district court to the San Mateo County Jail. And there was a response from the San Mateo County Jail about the computerized housing records. That information was not obtainable by my client in the state courts. The petition for writ of habeas corpus in state court in California, you're not entitled to it. You're not entitled to a subpoena just because you filed a petition. So he had no way to obtain computerized records at the San Mateo County Sheriff's Office. How did the information from Mr. Anthony come to the attention of your client? Honestly, I don't know. I know his – I believe his declaration dated – it was dated March 26, 1986. I don't know where Mr. Anthony was or the circumstances under which he signed this declaration. I'm not sure what it is that you contend would have been revealed to the public.  Well, if Mr. – excuse me – if Mr. Anthony had been allowed to testify, if he'd been brought to court and testified that he told my client Ray was an informant, I don't think it would have been revealed to the public. I mean, I understand that Mr. Anthony was in the jail at the same time as my client, but that doesn't disqualify him from being a witness, and counsel has a duty to, you know, if that testimony exists, to determine whether it's worthy of presenting before the jury. And there's just no evidence that that investigation took place or that there was any determination to, you know, whether there were reasons not to present that testimony. The difficulty for me is without knowing how this information was garnered, how do we know it was even available in 1990? How would the attorney have known to talk with Mr. Anthony? From my client, I'm sure. He could have talked – my client could have identified any number of witnesses at the jail who knew Mr. Ray and knew that he was informant and had discussed it with my client. That part's easy. Well, if it were so easy, it would have been presented before, I'm sure. Well, that's the issue. And that's all subject, obviously, to what would be decided at an evidentiary hearing. I mean, district, if we had a hearing... At an evidentiary hearing, you wouldn't be able to present much more than you presented here, the declaration of Mr. Anthony, right? I want to go back. I'm sorry. What would you present at an evidentiary hearing other than the declaration from Mr. Anthony? Well, presumably, we would present Mr. Anthony himself in live testimony, and Judge Wilken would decide whether... Same information, right? I'm just unclear. I know you answered this before. Maybe it's just my confusion. Was the allegation that there was ineffective assistance to Mr. Anthony, and the absence of counsel for failure to make the investigation that you now say should have been made, presented to the California Supreme Court? Let me tell you exactly the phrase. It was a very lengthy pro se petition, and it was presented both to the California Supreme Court and then to the federal court. And the part that raises this issue says, quote, trial counsel failed on purpose to not have the jailhouse informant investigated for the sole purpose to allow the impeachment to go undisclosed. I will admit it's not a... Not the most lawyer-like presentation. But pro se petitions are given some latitude. And it does, in any way you read it, it raises the issue that trial counsel failed to investigate the informant for credibility issues. All right, counsel, you've exceeded your time, but we will give you one minute for rebuttal. I would just, and I know the Respondent's not briefed the issue, but I did raise the one uncertified issue about the prosecutorial vouching, which I do believe has some merit to it, because the prosecutor here plainly argued that the informant would have been fired, and he hadn't been fired for 17 years. All right, counsel, we understand your argument. Thank you. All right. We'll hear from the government. May it please the Court, Arthur Beaver for Respondent Appellee. The district court here properly denied an evidentiary hearing. As we explained in the briefs, Appellant failed to satisfy the requirements of 2254E2. He did not factually or legally develop the claim before the State court, and he had the opportunity to do so. Moreover, the facts that he alleged, even if proven, would not entitle him to habeas relief. Race credibility is a tangential issue to the subject of Appellant's guilt. Sure, the confession added to the weight of the proof against him, but here we have the victim who ID'd him, who knew him from before, identified him in a lineup after the crime. His excuse for being in the neighborhood of the crime was laughably terrible. The coincidence was just too large to ignore that this particular man was identified as the shooter on the one weekend he happened to be surprising his friend for the Super Bowl, but never actually saw his friend, when combined with the evidence from the hostess at the Moonraker's restaurant that said that he was, in fact, he left for a period of 20 minutes or so. The evidence was overwhelming. But it was evidence that was submitted by the State, so... That's correct. It was subject to some dispute, but as Your Honors pointed out in your questions, race credibility had already been thoroughly impeached, both by his own testimony and by Appellant's. Ray admitted that he had been a snitch for a long time, that he expected to be paid for this testimony. He admitted that he was well-known in the jail as a snitch. Moreover, when Appellant testified on his own behalf, he explicitly did say, I did not confess to him, we were never alone together for long enough for me to have confessed. So these types of issues were already presented to the jury. The addition of further affidavits or testimony from other inmates who only speculatively could have known the movings of Ray or Garner within the jail about whether or not Garner confessed was speculative and cumulative. And it's perhaps for that reason that maybe counsel did investigate these people and decided not to present their testimony, because it would not have helped the case. It might have distracted the jury. In cases like this, the district court acted within its discretion. It found there was no entitlement to relief based on the factual allegations made by Appellant. Further, as we argued in our brief, the claim was presented in a very summary form to the California Supreme Court, buried in other claims of IAC. It was never developed. The two affidavits and the letter from Sergeant Titus that was presented to the Federal Court, the one from Mr. Hall was presented to the State court, but the other two were not. So the counsel, when he was proceeding pro se, one wouldn't expect the precision that one would get from an attorney. Of course. Liberally construing his claim, however, when you look at the substantive claims of ineffective assistance of counsel that he did make in that State petition, he was developing other aspects. I slipped my mind exactly what claims were being made in that particular subheading of his very lengthy petition. But surely he could do more than one sentence or explain. Especially because in that one sentence he makes the claim that this was on purpose, an exceedingly unlikely claim. But if there was anything to it at all, you think even a pro se who wrote at such length would have added, now the reason I know it's on purpose is because he told me such and such or at least something which he didn't do. Correct. He could have denied that he was in the same cell block as he tries to rely on Sergeant Titus' letter. He could have named Mr. Hall or the other affiant by name, saying I mentioned these people to defense counsel and he refused to call them or investigate. He could have done all that. But for a pro se, we are, in this circuit at least, we are very liberal in construing their pleadings to give them the maximum benefit. Even if his claim had been legally presented to the California Supreme Court, the facts supporting that claim, namely the letter from Sergeant Titus and the second affidavit, were never presented to the State court. Right. Don't you think it's cleaner to just address it on the merits? Yes, it would be, Your Honor. Yes. We're raising the exhaustion issue purely to preserve it, but we do believe that the merits here support the district court's ruling. Unless the Court has any further questions, we're prepared to submit them in brief. Any questions, Judge Hoog? No, thanks. All right. Thank you, counsel. Thank you. One minute for rebuttal. Just very briefly, Your Honors. I don't know. I have a hard time with the statement that my client failed to develop this in the State court. I mean, he filed at least seven petitions with the California Supreme Court and has never given a hearing on anything in the State court. So he did the best he could and went to extraordinary lengths to try to get all these issues before the State courts, but they weren't interested in hearing them. The respondent says my client's alibi was laughable, but, I mean, in all honesty, the same could be said of the prosecution's theory of the case. I mean, their whole theory was that the victim's sister or, sorry, ex-wife was so mad at having to pay him $500 a month in alimony that her brother hired someone to murder him and supposedly, you know, paid him hundreds of thousands of dollars. That is, in my view, a pretty bad case. Well, he didn't identify him precisely that night, and when he was finally shown days later a photograph of his brother-in-law with my client in the same picture, well, yeah, he did identify him. He described him as a friend of his brother-in-law. I mean, he was pretty clear about who shot him. In any event, you've exceeded your time. Thank you, and thank you to both counsel for argument in this case. The case, as argued, is submitted for decision by the court.
judges: Hug, Rawlinson, Cjj Rakoff (S. New York), Dj